FORT SMITH *v*. SCRUGGS.

Opinion delivered July 16, 1902.

1.  VEHICLE TAX—DOUBLE TAXATION.—The act of March 26, 1901, providing that "cities of the first class are hereby authorized to require residents of such city to pay a tax for the privilege of keeping and using wheeled vehicles," is not invalid for attempting to authorize double taxation, as the act authorizes, not a property tax, but a tax on the privilege of using the public streets of the city. (Page 553.)

2.  CONSTITUTIONAL LAW—TAXATION.—Const. 1874, art. 16, § 5, providing that "all property subject to taxation shall be taxed according to its value," and in such manner as to make the value "equal and uniform throughout the state," applies only to property, and not to privilege, taxes. (Page 554.)

3.  VEHICLE TAX—LEGALITY.—The legislature has power to authorize cities to impose a tax upon the privilege of driving vehicles upon the public streets. (Page 554.)

4.  SAME—DISCRIMINATION.—The act of March 26, 1901, authorizing cities of the first class to require residents thereof to pay a tax for the privilege of keeping and using a vehicle within the city, is not void as discriminating in favor of those who dwell outside of the city and use a vehicle therein. (Page 556.)

5.  VIOLATION OF VEHICLE TAX ORDINANCE—DEFENSE.—One arrested for refusing to pay the vehicle tax imposed by a city ordinance cannot object that the ordinance is invalid in so far as it requires the payment of the tax in currency if he failed to tender city warrants in payment of the tax. (Page 557.)

6.  ORDINANCE—EFFECT OF PARTIAL INVALIDITY.—One accused of violating a vehicle tax ordinance cannot object that the ordinance is invalid in so far as it discriminates in favor of persons keeping and using more than five buggies, as, if that portion of the ordinance were stricken out, the material portion of the ordinance would still stand. (Page 557.)

Appeal from Sebastian Circuit Court.

STYLES T. ROWE, Judge.

Reversed.

STATEMENT BY THE COURT.

The city of Fort Smith, a city of the first class, on the 17th day of January, 1901, duly enacted and published an ordinance, the first section of which provides as follows, to-wit:

" That hereafter it shall be unlawful for any person, firm or corporation of the city of Fort Smith to keep and use any wheeled vehicle, including cart, buggy, carriage, surrey, delivery wagon, or any other vehicle, except bicycles, without first having obtained a license therefor."

The ordinance also designates the amount of license fees to be paid for different kinds of vehicles, among them being the following: " For a one-horse buggy or phaeton carrying not more than two persons, $2 per annum; $1.25 for six months. For each one-horse delivery wagon, $4 per annum; $2.50 for six months."

Another section provides that "all licenses specified in this ordinance shall be collected in gold, silver, or United States currency, and shall be paid into a fund known as the Street Fund, and shall be kept separate and apart from all other moneys of the city and the said fund shall be used exclusively for the purpose of repairing and improving streets."

The ordinance further provides that a violation thereof shall be a misdemeanor, punishable by fine of not less than $5 nor more than $25.

N. F. Scruggs, a resident of the city, engaged in the retail grocery business, kept and used in the city for pleasure driving a one-horse buggy. He also kept and used there a one-horse

delivery wagon, with which he delivered groceries to his customers free of charge. He did not take out a license for either of his vehicles, and was arrested and tried and fined for using his vehicles without a license. He appealed to the circuit court. On a trial in the circuit court the presiding judge declared the law as follows:

" The act of the general assembly of this state, passed in 1901, granting to cities of the first class the right to tax residents therein who keep and use wheeled vehicles is unconstitutional and void, in this, that it is either an attempt by the legislature to authorize said cities to impose and levy a direct tax upon wheeled vehicles as property in excess of the amount limited by the constitution and in violation of its provisions relating to taxation, or it is an attempt to create out of the common right to use vehicles a privilege and thereupon to tax the same. The legislature not having the power to authorize plaintiff by its common council to pass the said ordinance, the same is invalid."

The court thereupon found the defendant not guilty, and gave judgment accordingly. The city appealed.

*F. M. Jamison*, for appellant.

If the legislature can impose such a law, it can also delegate the authority to municipal corporations. Const. 1874, art. 3, § 23. The power to tax is inherent, and can only be restrained by the constitutional provisions. Cooley, Const. Lim. 587; Tied. Lim. Pol. Pow. 471; Desty, Tax. 81; 46 Ark. 477; Cooley, Tax. 4; 4 Pet. 563; 4 Wheat. 430; 15 Wall. 300. The act is not in conflict with the constitution. Beach, Pub. Corp. 1356; 7 Mo. App. 474; 58 N. J. L. 604; 45 Ohio St. 63; 41 Pac. 826; Burr. Tax. § 54; 22 So. Rep. 627. Constitutional provisions in regard to taxation do not apply to municipalities. 13 Ark. 752; 21 Ark. 40; 27 Ark. 625; 33 Ark. 442; 44 Ark. 134; 46 Ark. 479. It is no tax upon property. 73 Me. 526; 46 Ark. 471; 7 Mo. App. 469; 36 L. R. A. 413; 31 Gratt. 646; 64 Ga. 128; 120 Ala. 623; 29 L. R. A. 608; 47 L. R. A. 205; 36 L. R. A. 416. The courts have always upheld such acts. 7 Mo. App. 468; 70 Mo. 562; 45 Ohio St. 63; 31 Pa. St. 16; 43 Ill. 47; 8 Heisk. 524; 6 S. W. 911; 94 Mo. 630. The ordinance is not void. 46 Ark. 482; 46 Ark. 328; 37 Ark. 356; Black, Int. Laws, 96; Cooley, Const. Lim. 209; 41 N. J. L. 71; 39 Ind. 429; 53 Mich. 367.

*Mechem & Bryant,* for appellee.

A special tax imposed for the right to keep and use a vehicle, upon which all other taxes have been paid, is void. 141 Mo. 619; 80 Ky. 656; 6 So. Rep. 911; 62 Ga. 645; 31 Tex. 277; 175 Ill. 445; 53 L. R. A. 456; 2 Ark. 288. The legislature and a municipality have no power to impose a tax on such vehicles. 12 Mass. 252; 15 Ohio, 625; Tied. State and Fed. Control, § 119; 13 Ark. 782; 71 Ill. 269; 77 Ill. 156; 78 Ill. 144; 46 Mo. 575; 80 Ky. 657; 98 Ky. 344; 3 Sneed, 120; Cooley, Tax. 596; 23 So. Rep. 141; 43 Ark. 52; Cooley, Const. Lim. (5th Ed.), 47, 208, 603; 26 Ark. 255; 98 N. Y. 106; 84 N. Y. 91; 129 Mo. 163; 33 W. Va. 179; 16 Pick. 121. The tax is void for want of uniformity. 19 Fed. 162; 25 Ark. 289; 32 Ark. 31; 48 Ark. 251, 370; 57 Ark. 554; 22 So. Rep. 627. The tax is void because it requires payment in gold, silver, or United States currency. Const. 1874, art. 16, § 19; 32 Ark. 496.

*F. M. Jamison,* for appellant, in reply.

Art. 17, § 10, Const. 1874, has reference to general taxes, and not taxes for a special purpose. Sand. & H. Dig., § 1002; 36 Ark. 581; 33 Ark. 436; 28 Ark. 577.

RIDDICK, J., (after stating the facts.) This is an appeal from a judgment rendered in a case where a resident of the city of Fort Smith was prosecuted for keeping and using a wheeled vehicle in that city without having a license therefor. The question in the case relates to the validity of the city ordinance which imposes a license tax upon residents of the city for the privilege of keeping and using wheeled vehicles upon the streets of the city. Our statute on that subject is as follows, to-wit:

" Cities of the first class are hereby authorized to require residents of such city to pay a tax for the privilege of keeping and using wheeled vehicles, except bicycles, but such tax shall be appropriated and used exclusively for repairing and improving the streets of such city." Acts of 1901, p. 113.

There can be no doubt that the language of this act is broad enough to authorize an ordinance taxing residents of the city for the privilege of keeping and using wheeled vehicles upon the streets of the city. If the act is valid, it follows that the ordinance, if properly passed, is valid unless void because it goes beyond the

authority conferred by the statute. It is admitted that the ordinance was properly passed, and the most important question raised by the appeal relates to the validity of the statute upon which the ordinance is based.

The first objection urged against the statute is that it attempts to authorize double taxation. It is said that, as the defendant had already paid the general state and city taxes on his buggy and wagon, the attempt to make him pay a license fee for the privilege of using them is really an attempt to levy an additional tax upon his wagon and buggy. Counsel say that a tax on the use of an article is a tax on the article itself. While this may be true of a piano, bedstead, or cooking stove, the use of which involves no injury or detriment to the public or its property, as to wheeled vehicles it is different, for they are made to be used upon roads and streets. The streets belong to the public. and are under the control of the legislature, whose province it is to enact laws for their improvement and repair. The chief necessity for keeping improved streets is that they may be used for the passage of wheeled vehicles, and the wear of the streets caused by the passage of such vehicles over them makes necessary constant and expensive repairs. For this reason, no doubt, the legislature considered it to be equitable and just that owners of such vehicles should, in addition to the general tax upon their property, pay something for the privilege of using the streets as driveways, the amount paid to go towards keeping the streets in good repair. This is what the legislature attempted to do.

The act, we think, plainly shows that there was no intention to authorize a tax upon vehicles or other property. It authorizes only a tax upon the privilege of keeping and using vehicles upon the streets of the city, and it requires that this tax shall be used exclusively for repairing and improving the streets of the city.

A resident of the city may keep and use at his place in the country as many vehicles as he pleases, but he is subject to no tax, under this statute, unless he uses them on the streets of the city. He can keep and use vehicles anywhere in the world, except on the streets of the city of his residence, and he is not liable to the tax. The license fee imposed is, then, not a tax upon property, but is in the nature of a toll for the use of the improved streets. In other words, it is the privilege of using vehicles on the improved streets, and not the vehicle itself, that is taxed. We are therefore

of the opinion that the statute is not subject to the criticism that it authorizes double taxation, and the contention of the defendant on that point must be overruled.

Having reached the conclusion that this ordinance does not attempt to tax property but to tax a privilege, it follows that the provisions of our constitution requiring that all property "shall be taxed according to its value," and in such manner as to make the same equal and uniform throughout the state, do not apply, for they refer to taxes upon property only. *Little Rock* v. *Prather*, 46 Ark. 479; *Baker* v. *State*, 44 Ark. 134; *Washington* v. *State*, 13 *ib.* 752.

The next question presented is whether the legislature has the power to authorize cities to impose a tax upon the privilege of driving vehicles upon the public streets. The contention on this point is that a resident of a city has a right to drive upon the public streets, and that the right to do so is not a privilege that can be taxed. It is no doubt true that the city could not impose a tax upon the privilege of using the streets for driving vehicles upon them without legislative permission to do so. The right to drive on the public streets could not be treated as a privilege but for the act of the legislature making it one. But the streets belong to the public, and are under the control of the legislature. Elliot on Roads (2d Ed.), § 21. It is within the power of the legislature not only to make needful regulations concerning the use of the public roads and streets, but also to provide means by which they may be improved and kept in repair. In order to effect that purpose, the legislature has, in effect, declared the use of the streets by wheeled vehicles to be a privilege, and has authorized the city to tax the privilege. We know of no limitation on the power of the legislature that prevents it from passing such an act, and thus authorizing the imposition of a reasonable tax for that purpose. "Everything," says Judge Cooley, "to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise, or privilege, or occupation, or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the legislature in its discretion shall at any time select it for revenue purposes." Cooley, Tax. (2d Ed.), p. 5. Again, he says: "The power to impose taxes is one so unlimited in force and so searching in extent that

the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it. It reaches to every trade or occupation; to every object of industry, use, or enjoyment; to every species of possession; and it imposes a burden which, in case of failure to discharge it, may be followed by seizure and sale or confiscation of property." Cooley, Const. Lim. (6th Ed.), 587.

These statements of the law by the learned author are well supported by decisions of our highest courts. *McCulloch* v. *Maryland,* 4 Wheat. (U. S.), 316, 418; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *Youngblood* v. *Sexton,* 32 Mich. 406.

The subject-matter of this statute comes, we think, within the general lawmaking power of the legislature, and, if there be any limitation forbidding the exercise of such power in that respect, it must be found in the constitution. But there is none. Our constitution specially provides that the legislature shall have power to tax privileges in such manner as may be deemed proper. It also authorizes the legislature to delegate the taxing power to towns and cities of the state to the extent necessary for their "existence, maintenance and well-being." Const. 1874, art. 2, § 23; also art. 16, § 5. And it has been established by the decisions of this court that the legislature may delegate to towns and cities the power to tax occupations. *Little Rock* v. *Prather,* 46 Ark. 479.

If, notwithstanding the fact that a merchant has paid taxes on all his property, including his stock of goods, the state may yet authorize the city to compel him to pay an additional tax for the privilege of carrying on his business, why may not the state authorize the city to collect a reasonable tax in the nature of a toll for the use of its streets? It would seem that the tax for the use of the streets is more equitable and just than the occupation tax. The goods of the merchant are in his own store. In pursuing his business he is not infringing upon the rights or injuring the property of either the public or its citizens. But the use of the public streets by driving vehicles upon them does wear them, and in the end calls for repairs and additional outlay on the part of the public. The improvement of the streets confers upon the class taxed, that is to say, upon those who keep and use vehicles, a special benefit, so that it is right that they should pay a greater proportion of the taxes required to keep them in repair than those

who do not use the streets in that way. In other words, to quote the language of a Missouri court, it is just and proper that "those who mainly wear out the streets should mainly pay for keeping them in repair." *St. Louis* v. *Green,* 7 Mo. App. 477.

We are therefore inclined to the opinion that this is a just and equitable statute. But, whatever may be our views about the expediency of the act, it must be sustained on the ground that it comes within the sovereign powers of the legislature, and because we find nothing in the constitution that forbids the exercise of such power. Similar statutes have been sustained in other states. *St. Louis* v. *Green,* 7 Mo. App. 474; *St. Louis* v. *Green,* 70 Mo. 562; *Mason* v. *Cumberland,* 92 Md. 451; *Tomlinson* v. *Indianapolis,* 144 Ind. 142; *Frommer* v. *Richmond,* 31 Gratt. (Va.), 646 See also *Little Rock* v. *Prather,* 46 Ark. 479.

But it is said that, conceding that the legislature had the power to permit cities to levy a toll for the use of the streets, it should be imposed equally upon all who use the streets, and that this act is void for the reason that it discriminates in favor of those who dwell outside of the city, and permits the tax to be levied upon residents only.

It is doubtless true that the legislature could not arbitrarily select certain citizens upon whom to impose the tax, while exempting others in like situation. But the rule of equality only requires that the tax shall be collected impartially of all persons in similar circumstances; and this statute applies equally to all persons of the class taxed. As a class, residents of the city use the streets more, and are more benefited by having them kept in good repair, than those who do not live in the city. It is true that nonresidents of the city also use the streets with their wagons and other vehicles, and it may be true that certain of them use the streets as much or more than certain of the residents of the city, but, as a class, they do not use the streets as much as residents of the city, and this furnishes a reasonable basis for the distinction made in the act between the two classes. The requirement of the statute that the tax must be imposed on residents of the city only is but an adoption by the legislature of the common policy of making each community keep up its own highways. This does not discriminate unjustly in favor of those who live beyond the city limits, for they have to keep other highways which the people of the city may in turn use free of charge. For this reason we think that

it was within the discretionary powers of the legislature to make this distinction, and that it does not invalidate the act. After a full consideration of the questions presented we are of the opinion that the enactment of this statute was a valid exercise of legislative power. With the wisdom or expediency of it, as before stated, we have nothing to do. If it should prove to be unsatisfactory, there is still a remedy. The legislature can repeal the statute, or the city council may repeal the ordinance, but the courts cannot do so.

Having reached the conclusion that the statute is valid upon which the ordinance is based, there remains for consideration certain objections to the ordinance which it is contended are not authorized by the statute. First, it is said that the ordinance is invalid because it requires the payment of the license tax in gold and silver or United States currency. Now, this license tax is for a special purpose, and the law requires that the proceeds thereof shall be used for the repair and improvement of the streets exclusively. For this reason there may be room for doubt as to whether it could be paid by warrants of the city drawn on the general fund. But, if this provision of the ordinance was void, it would not annul the whole ordinance. If it be invalid, it can be disregarded. Conceding that this provision of the ordinance requiring the tax to be paid in gold, silver or currency to be void, defendant should have tendered the warrants if he desired to make the payment with city warrants, and demanded a license. He is prosecuted for keeping and using a vehicle in the city without having a license therefor. He had no license, and had made no offer of money or scrip to procure one. We therefore think the defense made on this point is not tenable.

The same thing may be said of the provision making a distinction in rates in favor of persons keeping and using more than five buggies. If we strike out that portion of the ordinance, the material portion of it stands, and this case would not be affected. For this reason it is not necessary to determine those questions in this case. It is not claimed that the amount of the license fee imposed by the ordinance is unreasonable, and it follows from what we have said that in our opinion the circuit court erred in its declaration of law, and in its judgment discharging the defendant. The judgment is therefore reversed, and the cause remanded for a new trial.