WISEMAN v. MADISON CADILLAC COMPANY.

4-4204

Opinion delivered December 23, 1935.

1022

*Carl E. Bailey*, Attorney General, *Thomas Fitzhugh*, Assistant, and *Millard Alford*, for appellant.

*Owens & Ehrman, John M. Lofton, Jr.*, and *E. L. McHaney, Jr.*, for appellee.

MEHAFFY, J. The appellee brought this suit in the Pulaski Chancery Court, alleging that the General Assembly of the State of Arkansas for 1935 enacted a law known as the Arkansas Emergency Retail Sales Tax Law (act 233 of the Acts of 1935); that the act contained certain exemptions, among others, there was exempt from the provisions of the act, in any case where there is already a privilege tax or a license tax imposed, equal to the amount of such already imposed privilege tax or license. The section relied on is § 15, and is as follows:

"Section 15. Exemptions. There are hereby specifically exempted from the taxes levied in this act: a. Retail sales which are prohibited from taxes by the Constitution or laws of the United States of America or by the Constitution of this State. b. A portion of all retail sales on articles and/or commodities on which a State privilege tax imposed in this act shall be an amount equal to whatever is the excess above the already imposed privilege tax or license. c. If the application of the tax provided in this act on the retail sale of any article or commodity is found to be unconstitutional, it is

specifically understood that the validity of this act shall be affected only as relates to said articles and will not affect the validity of the tax imposed on other articles in this act.

"All foods necessary to life, more specifically defined as follows: flour, meat, lard, sugar, soda, baking powders, salt, meal, butter fats, eggs, and all medicines necessary for the preservation of public health, each of above to be exempt from the provisions of this act."

It was further alleged that at the time of the passage of the sales tax law there was already imposed a privilege or license tax upon automobiles, and that any one purchasing an automobile for use within the State of Arkansas was required by law to pay such license fee before said automobile may be used within the State; that it is the plain import and intention of the act that the amount of such license fee on the use of automobiles already imposed should be deducted from the amount of the retail sales tax payable under act 233, *supra;* that the Commissioner of Revenue had promulgated rules and regulations which provide in substance that the seller of an automobile at retail must collect two percentum of the entire purchase price from the purchaser and remit to defendant, and that no deduction would be allowed for the license fee already paid.

Petitioner prayed for a restraining order, and that upon a final hearing a permanent injunction be issued.

Appellant filed a demurrer to the complaint. A temporary restraining order was issued. Other automobile retail dealers filed interventions.

An amendment to the complaint was filed stating that the Senate bill which afterwards became act 233, as originally introduced contained the following, as § 15:

"Section 15: Exemptions. There are hereby specifically exempted from the taxes levied in this act the following:

(a) Sales of gasoline.

(b) Sales of cigars and cigarettes.

(c) Sales of tickets of admission to State, county, district or local fairs, and educational, religious or charitable activities, where the entire amount of such receipts

is expended for educational, religious or charitable purposes.

(d) Sales at retail which this State is prohibited from taxing under the Constitution or laws of the United States of America, or under the Constitution of this State.

(e) Sales made by persons who produce livestock, poultry and other products of farm, grove or garden, when said sales are made by the producer, or members of his immediate family, or employees selling such products for the producer, in the original state or condition of preparation at the place of production, and before such products are subjected to any process coming within a class of business.''

A motion was made to strike the amendment, which was overruled by the court, and answer was filed denying the allegations of the amended complaint.

The appellee introduced Senator E. B. Dillon, a member of the Fiftieth General Assembly, who testified with reference to holding meetings and what the purpose of the amendment was, and testified at length about the passage of the bill through the Senate. He testified about his understanding of the intention of the Legislature and the intention of the committee in adopting § 15 as it now appears in the act.

The court held that the evidence offered was incompetent, and therefore did not consider it. The court then entered a decree to the effect that the Legislature intended that the amount of license fee paid for the use of an automobile should be deducted from the amount of sales tax collected on the sale of a new automobile, and perpetually enjoined the defendant from enforcing or attempting to enforce collecting or attempting to collect a sales tax on sales of a new automobile without first deducting from the amount of the tax the amount of the license fee paid for the use of said automobile to the State of Arkansas.

The chancery court was correct in holding the evidence introduced by appellee incompetent.

The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts

will not inquire into the motives which influenced the Legislature or individual members, in voting for its passage, nor indeed as to the intention of the draftsman or of the Legislature so far as it has not been expressed in the act. So in ascertaining the meaning of a statute the court will not be governed or influenced by the views or opinions of any or all of the members of the Legislature, or its legislative committees or any other person. 59 C. J. 1017.

Wherever there is ambiguity in a legislative act, the court will resort to the history of the statute and of the proceedings attending its actual passage through the Legislature as disclosed by the legislative journals. Courts will take judicial notice of and consider the action of the Legislature as shown by the journals. 59 C. J. 1019; *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9; *Ruddell* v. *Gray,* 171 Ark. 547, 285 S. W. 2.

Appellee's first contention is that, under the plain terms of § 15 of act 233, *supra,* the sales tax payable on the sale of an automobile is the difference between the license tax paid on said automobile and 2 per cent. of the sale price on said automobile.

Section 15, above quoted, provides: "There are hereby specifically exempted from the taxes levied in this act: (b) A portion of all retail sales on articles and/or commodities on which a State privilege tax or license is already collected."

Appellee argues at length that the license fee paid for the privilege of driving automobiles on the highways is a privilege tax. We agree with appellee in this contention. Numerous authorities are cited to support this argument.

The first case referred to is *Ft. Smith* v. *Scruggs,* 70 Ark. 549, 69 S. W. 679. That was a case involving the validity of an ordinance of the city of Fort Smith making it unlawful for any person to keep and use wheeled vehicles without first having obtained a license therefor. The statute authorized cities of the first class to require residents of such city to pay a tax for the privilege of keeping and using wheeled vehicles, etc. It

was contended in that case that the tax on the use of an article is a tax on the articles itself. The court said:

"While this may be true of a piano, bedstead or cooking stove, the use of which involves no injury or detriment to the public or its property, as to wheeled vehicles it is different, for they are made to be used upon roads and streets. The streets belong to the public, and are under the control of the Legislature whose province it is to enact laws for their improvement and repair."

The court in that case held outright that the tax imposed by the ordinance was not a property tax, but a privilege tax. It was not a tax on the vehicle, but a tax the owner was required to pay for the use of the vehicle on the streets.

The automobile tax required to be paid by the purchaser of an automobile is paid for the privilege of using the public highways. Act 134 of the Acts of 1911 provided for the registration of owners of automobiles, and for a registration fee of $5. It also provided that each owner of a vehicle should keep, conspicuously displayed upon the front and back of every such motor vehicle owned by him, the number of his vehicle. He was required to do this under § 3 of the act "whenever the same shall be driven or used upon the public streets, roads, turnpikes, parks, parkways, drives or other public highways in this State."

This act has been amended many times, but in all the acts it is made clear that the tax is paid, not on the car, but for the privilege of using the public highways. The portion of § 15 above quoted shows that the exemption applies only where articles or commodities on which a privilege tax is paid shall be entitled to the exemption. There is no privilege tax or license on the automobile, but it is a tax that the owner must pay for the privilege of using the public highways. The dealer is not interested in any way in this license tax. He does not pay it or collect it. As to a tax on the other articles that appellee mentions, cigarettes, cigars and gasoline, the dealer himself is required to collect the tax. He is not required to do this in the sale of automobiles.

Moreover, the tax on these articles, cigarettes, cigars and gasoline, is not a tax for the privilege of using them, but is a tax on the privilege of possessing the property without any regard to how it is used or whether it is used at all.

Act 11 of the Extraordinary Session of the General Assembly of February 12, 1934, amends paragraph A of § 24 of act 65, approved February 28, 1929. The act of February 28, 1929, was an act to amend and codify the laws relating to State highways, and § 24 of act 65 provides: "The fee for the registration and licensing of all motor vehicles shall be as follows:" Then follows the amount of fees for certain kinds of automobiles, and paragraph M of § 24 reads as follows: "Each of the fees herein authorized is declared to be a tax on the privilege of using the vehicle on the public roads and highways of the State of Arkansas."

It seems therefore clear that the intention of the Legislature was to tax the privilege of using the highways of the State, and was in no sense a tax on the automobile or on the article or commodity. The distinction between taxing property or the possession of property, as whiskey, wines, beer, tobacco, cigarettes, cigars, etc., and a tax for the privilege of using the highway is clear.

It is next contended by the appellee that extraneous aids are permissible to determine the legislative intent, and in this connection, attention is called to *Hartford Fire Ins. Co.* v. *State,* 76 Ark. 303, 89 S. W. 42. In that case the court said: "To ascertain the legislative intention, the court must look to public events which are sufficiently notorious to be known to all men of reasonable information; to public documents, executive messages, proclamations and recommendations; to legislative proceedings and journals, but not to individual views, votes or speeches of legislators; to the result of elections and political issues therein determined; to a well defined and crystalized public sentiment, when so notorious as to be a part of the well-known events of the day. In short the courts may, and, when the statute is not clear, must, take cognizance of the trend of public events which make the 'history of the times,' in so far as the same

touches or furnishes the moving cause for the statute under review. These principles are well established."

To support this declaration the following citations are given: 2 Lewis' Sutherland on Statutory Construction, §§ 462, 470, 471; 1 Elliot, Evidence, §§ 53, 59, 65, 67; *U. S.* v. *Union Pac. Ry. Co.,* 91 U. S. 72; *U. S.* v. *Trans. Mo. Freight Ass'n,* 166 U. S. 290, 17 S. Ct. Rep. 540; *Redell* v. *Moores,* 63 Neb. 219, 88 N. W. 243; *State* v. *Schoonover,* 135 Ind. 526, 35 N. W. 119; *State* v. *Downs,* 148 Ind. 324, 47 N. W. 670; *Williams* v. *State,* 64 Ind. 553; *Prince* v. *Skillin,* 71 Me. 361, 36 Am. Reports 325; *Swinnerton* v. *Columbian Ins. Co.,* 37 N. Y. 188, 93 Am. Dec. 560.

This court has repeatedly held that courts may look to the legislative journals and public documents where there is ambiguity, in order to find the intention of the Legislature, but we have never held that a senator or representative may testify as to what his opinion is, or that evidence may be introduced as to the amendments and the result of said amendments. The court takes judicial notice of these things, and will find out for itself from the journals what the procedure was, and no outside evidence is admissible. But when we have considered all these things, we are of opinion that the tax paid by one who operates a car on the highway of the State for the privilege of so operating it is no concern of the dealer, and the payment of this tax does not justify any deduction from the sales tax due the State from the dealer.

It is contended, however, by appellee that the amendments adopted to § 15, as it was originally introduced, show that it was the intention of the Legislature to credit the tax paid on automobiles with an amount equivalent to the license tax. We have set out above § 15 as originally introduced, and also § 15 as finally adopted by the Legislature. We fail to find anything that tends to show that the intention was as contended for by the appellee.

If the Legislature had intended to exempt automobile dealers, as claimed by appellee, it could have said so in language about which there could have been no

doubt. It did not do this. Appellee, claiming an exemption, the burden is upon it to show that it is entitled to exemption.

"In all cases of doubt as to the legislative intention, or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to exemption, bringing himself clearly within the terms of such conditions as the statute may impose." 61 C. J. 391; *Brodie* v. *Fitzgerald*, 57 Ark. 445; 26 R. C. L. 313 *et seq.*

"An intention on the part of the Legislature to grant an exemption from the taxing power of the State will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a special privilege or exemption is claimed under a statute, charter, or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed, and cannot be made out by inference or implication, but must be beyond reasonable doubt. In other words, since taxation is the rule and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing is upon him who claims it." Vol. 2, 4th ed., Cooley on Taxation 1403, § 672.

The decree of the chancery court is reversed, and the cause dismissed.